**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JON ERIC HOLLEY,
            *Petitioner-Appellant,*

v.

MICHAEL YARBOROUGH,
            *Respondent-Appellee.*

No. 08-15104

D.C. No.
CV-02-00310-
RRB/JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
April 13, 2009—San Francisco, California

Filed June 16, 2009

Before: Thomas G. Nelson, Andrew J. Kleinfeld and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

7157

**COUNSEL**

Suzanne Adele Luban, Oakland, California, for the petitioner-appellant.

Edmund G. Brown Jr., Dane R. Gillette, Michael P. Farrell, Brian G. Smiley, and Tami M. Warwick, Office of the California Attorney General, Sacramento, California, for the respondent-appellee.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

Petitioner-Appellant Jon Eric Holley appeals the district court's order denying his petition for a writ of habeas corpus. Holley claims that he was denied his rights under the Sixth and Fourteenth Amendments when the trial court precluded the introduction of impeachment evidence and prevented his cross-examination of the alleged victim about her prior statements, including statements about sex and indications that others had made sexual advances toward her. Holley also claims that he was denied a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment, by the trial court's admission of evidence that he kept sexually explicit materials in his home, that he owned weapons, and that he

battered a prior girlfriend. We have jurisdiction under 28 U.S.C. §§ 2253(a) and 1291. We reverse and remand for issuance of the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 1998, Nicky Van Suydam asked Holley to babysit her two children, Raina and Matthew, who were 11 and 10 years old, respectively, while she worked a double shift at the Killer Chicken restaurant. Van Suydam had become acquainted with Holley almost two years earlier when they met at an Alcoholics Anonymous meeting, after which the pair had a brief sexual relationship. Van Suydam's children had been around Holley six or seven times prior to the day in question, and at his house three times. The children liked Holley and at one point told him they wanted him to be their father.

Holley agreed to babysit the children until Van Suydam finished work. He picked the children up from the Killer Chicken and took them to his home. They watched television, played with Holley's dog, and told jokes, one of which made Raina laugh so hard she wet her pants. Holley spoke with Van Suydam on the phone, and then drove Raina and Matthew to their home so Raina could change her clothes.

Raina testified that on this trip, from Holley's home to her own home, she sat on Holley's lap, steering the car while he operated the pedals. She further testified that as she sat on his lap, Holley rubbed her legs and breasts. Holley testified that Raina did not sit on his lap, but rather sat on a towel on the passenger seat (because she was wet) next to him, on his right, and that the only time he touched her was to put his hands on her shoulders when the car was stopped.

At her house, Raina changed from her pants into clean shorts, and then they drove back to Holley's house. Raina again testified that she sat on Holley's lap to steer the car, and

that Holley put his hands up the bottom of her shorts and rubbed her legs and breasts. Holley denied touching Raina on this trip as well, except to put his hands on her shoulders when they were at stoplights.

Shortly after returning to Holley's home, the three left again to go to a liquor store, where Holley bought some peppermint schnapps for himself and candy and ice cream for the children. Raina testified that on the way to the store, Raina sat on Holley's lap, steering the car, and Holley put his hands under her shirt, touching her breasts, and under her shorts, touching her buttocks. Holley denied touching Raina except to put his hands on her shoulders at stoplights, so she would believe she was driving the car.

After returning from the store, the children played while Holley watched television, lying on the couch. Raina testified that at one point, she came over to the couch and sat on Holley's stomach. When she tried to get up he put his hands on her legs and held her to him for about a minute, keeping her from getting up. She testified that Holley sometime later asked her to take off her clothes, and that she refused. In response, she claims that Holley pulled his shorts to the side and exposed his testicles to the children. Raina said that she turned away from Holley at that point, but saw in a mirror, which was placed behind a glass cabinet, the reflection of Holley's apparently erect penis coming out of the top of his shorts. Raina also noticed an old gun and some knives in the glass cabinet. Holley denied exposing himself to the children.

The three then went outside and began roughhousing. At one point, Holley picked Raina up and held her horizontally, squeezing her in a way that made it hard for Raina, who has a heart condition, to breath. The children told Holley to put Raina down, and Matthew called Holley a "motherfucker." Holley got angry about the swearing and drove the children back to the Killer Chicken. Raina testified that on the way Holley said he wanted to kill them, although she interpreted

it as a figure of speech. Matthew testified that, although he did not hear Holley threaten them, he was worried that Holley would do something because he had called Holley a bad name. Holley denied threatening the children.

Holley dropped the children off at the Killer Chicken. Raina testified that she told her mother "a little bit" about what happened, then the children went to Trudy's Market to buy some food and wait for Van Suydam's break. Holley also went to Trudy's Market to buy some cigarettes. The children hid from Holley and told the cashier that he had been mean to them. The cashier also testified that the children told her they were mad at Holley for not buying them a pizza, and that they were going to "get even" with him. Holley told the cashier that the children were "rotten little rats."

Van Suydam left work early to drive the children home. She testified that on the way home Raina told her that Holley had fondled her under her clothes. Van Suydam called the police.

Holley was charged with five felony counts of lewd and lascivious acts on a child under 14 years of age, one felony count of making terrorist threats, two felony counts of child endangerment, two misdemeanor counts of molesting a child, one misdemeanor count of contributing to the delinquency of a minor, and one misdemeanor count of indecent exposure. Following presentation of evidence at trial, the court granted the prosecution's motion to dismiss one count of lewd and lascivious acts, both child endangerment counts, and the count of contributing to the delinquency of a minor.

During the prosecution's case-in-chief, the defense objected to the presentation of evidence that Holley owned guns and knives. The court ruled that evidence of weapons found in areas where the children might have seen them while at Holley's home that evening was admissible. The defense also objected to the admission of a lewd matchbook and sev-

eral sexually explicit magazines seized from Holley's bedroom, which were admitted into evidence after both sides had rested their cases, and which were thereafter taken into the jury room for examination by the jurors.

Holley sought to impeach Raina's credibility by presenting testimony of two neighborhood children, Scott and Christa Westfall, that Raina had told them that she had done "weird stuff" in a closet with her boyfriend, a term she also used to describe what Holley had done in rubbing her legs and breasts; that a neighborhood boy wanted to "hump her brains out"; and that her brother Matthew had once tried to have sex with her. The court ruled after a hearing to limit the witnesses' testimony to exclude any references to sex or sexual conduct of others.

After thirteen and a half hours of deliberation, the jury convicted Holley of two counts of lewd and lascivious conduct, two counts of child molestation, and one count of indecent exposure. He was acquitted of the remaining counts of lewd and lascivious conduct and the charge of terrorist threats. The trial court sentenced Holley to a total term of eight years on April 28, 1999.

Holley appealed his conviction, which was affirmed by the California Court of Appeal, Third Appellate District, on October 31, 2000. The California Supreme Court denied Holley's petition for review on January 17, 2001. Holley then filed a habeas petition with the federal district court on February 7, 2002. In September of 2007, the magistrate judge assigned to Holley's case recommended granting habeas relief on the basis of Holley's claims that the trial court had wrongfully limited cross-examination and impeachment of Raina and wrongfully admitted the matchbook and adult magazines. The district court rejected the magistrate judge's recommendation and denied the petition on December 17, 2007. Holley, by then released from prison but facing a lifetime status as a sex offender, appealed to this court.

## STANDARD OF REVIEW

Federal habeas corpus relief for most state prisoners was established as a statutory remedy in 1867, enabling federal courts to grant a writ of habeas corpus in cases where a person is restrained in violation of the Constitution or federal law. Act of Feb. 5, 1867, Ch. 28, § 1, 14 Stat. 385. Since that time, the power to grant the writ has been adjusted by various congressional acts, although the general requirements for relief have remained the same. *Williams v. Taylor*, 529 U.S. 362, 375 (2000). The underlying principle is that, while not all constitutional errors are sufficient to entitle the petitioner to a remedy, "errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Id.*

Congress has most recently limited the federal court's power to issue the writ through the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. No. 104-132 §§ 101-108, 110 Stat. 1214, 1217-26 (codified as amended at 28 U.S.C. §§ 2241-55, 2261-66). AEDPA limits federal habeas corpus relief for any claim decided on the merits in state court proceedings to those cases in which the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Because Holley's petition for relief was filed after AEDPA's enactment, AEDPA controls this case.

Fulfilling AEDPA's requirements is the most serious hurdle for any federal habeas petitioner. AEDPA narrows the

possible bases for a successful habeas claim to constitutional violations of "clearly established Federal law," defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed. *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-06 (O'Connor, J., concurring). The state court's decision is "an unreasonable application" if "the state court identifies the correct governing legal principle" but applies the principle unreasonably to the prisoner's factual situation. *Id.* at 413. State court decisions are not subject to federal habeas relief if they are merely erroneous, and not unreasonable. *Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam). When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue. *Musladin*, 549 U.S. at 77.

We review the district court's denial of a writ of habeas corpus de novo, and we may affirm on any ground supported by the record. *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996). We review the state court's decision denying a habeas claim by looking to the state's "last reasoned decision," in this case, the opinion handed down by the California Court of Appeal. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## DISCUSSION

### A. Sixth Amendment Confrontation Clause

**[1]** Holley claims that the trial court's exclusion of testimony attesting to Raina's statements regarding certain sexual acts or the desires others felt for her violated his Sixth Amendment right to confront and cross-examine witnesses against him, and that the state court's decision on this issue was unreasonable. The Sixth Amendment guarantees a defendant in criminal proceedings the right "to be confronted with the witnesses against him." U.S. CONST. amend VI. The Supreme Court has indicated that " '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, at 123 (3d ed. 1940)). The right to cross-examination is thus constitutionally protected. A criminal defendant can prove a violation of his Sixth Amendment rights by "showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis*, 415 U.S. at 318).

**[2]** However, "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679. On the contrary, the right to cross-examination " 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). " '[T]rial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness'
safety, or interrogation that is repetitive or only marginally
relevant.' " *Id.* (quoting *Van Arsdall*, 475 U.S. at 679). How-
ever, "[r]estrictions on a criminal defendant's rights to con-
front adverse witnesses and to present evidence 'may not be
arbitrary or disproportionate to the purposes they are designed
to serve.' " *Id.* at 151 (quoting *Rock*, 483 U.S. at 56).

The California Court of Appeal affirmed the trial court's
ruling on the grounds that evidence of Raina's statements was
"of questionable, if any, relevance, had the potential for being
unduly prejudicial, and [was] not sufficiently probative of any
issue in the trial to warrant the consumption of time." In
determining that the statements were not relevant, the state
court reasoned that there was "no evidence of the falsity of
Raina's statements, no indication the statements were
intended as accusations, and significant dissimilarities
between the type of 'accusations' made to Scott and Christa
and those made against [Holley]." However, the federal mag-
istrate judge hearing Holley's habeas petition found that the
state court's conclusion that Raina's statements were irrele-
vant was unreasonable in light of established federal law, as
was the state court's conclusion that the statements were
unduly prejudicial and insufficiently probative to warrant the
consumption of time.

**[3]** Holley's cross-examination of Raina and introduction
of evidence that she had made prior claims of her own sexual
appeal was clearly relevant to impeach Raina, and thus allow
the jury to evaluate the credibility of her allegations. *Van Ars-
dall*, 475 U.S. at 680. Discrediting the accuracy and reliability
of Raina's testimony could have shown a tendency to exag-
gerate or overstate, if not outright fabricate. *See Davis*, 415
U.S. at 315-16; *Fowler v. Sacramento County Sheriff's Dep't*,
421 F.3d 1027, 1035 (9th Cir. 2005) (" '[T]he right to cross-
examine includes the opportunity to show [not only] that a
witness is biased, [but also] that the testimony is exaggerated
or [otherwise] unbelievable.' " (alteration in original) (quoting

*Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987))). In making a Sixth Amendment claim that he was denied appropriate cross-examination, Holley did not need to show that the excluded statements were consciously or maliciously fabricated. *Fowler*, 421 F.3d at 1036 (citing *Van Arsdall*, 475 U.S. at 680; *Davis*, 415 U.S. at 311). Evidence that Raina had a highly active sexual imagination or that she had a familiarity with sexual activities was relevant to counter the prosecution's theory of the case, as emphasized during closing argument, that a little girl like Raina would not fabricate things of a sexual nature.

**[4]** The state court's determination that the evidence was unduly prejudicial was also unreasonable. The Supreme Court has established that a trial judge may limit the defendant's right to cross-examination to avoid harassing the witness, prejudicing the jury against the witness, and confusing the issues. *Lucas*, 500 U.S. at 149. However, these limits must be reasonable and proportionate to the purpose they are intended to serve. *Id.* at 151. The trial court's decision to completely limit Raina's cross-examination to exclude any testimony regarding her references to sex, in order to avoid prejudice, was both unreasonable and disproportionate. *See Davis*, 415 U.S. at 319-20 (concluding that whatever "temporary embarrassment" the witness might have suffered was "outweighed by [the defendant's] right" to probe the witness' credibility); *Fowler*, 421 F.3d at 1040-41 (explaining that "embarrassment cannot serve as the basis to preclude relevant cross-examination" when the evidence is highly probative). Any prejudice the jury might have developed as a result of Raina's cross-examination would have been to discredit her claims due to her active sexual imagination, the very type of impeachment that Holley was entitled to engage in under the Confrontation Clause. Furthermore, Raina testified extensively regarding Holley's alleged misconduct. If the trial court was concerned about the cross-examination becoming too lengthy or Raina's being harassed, the court could have lim-

ited the time allotted to discussion of the sexual references, rather than excluding all discussion.

**[5]** Finally, the state court was unreasonable in concluding that the evidence Holley sought to present would not be sufficiently probative to warrant the consumption of time. First, it is unlikely that the presentation would have significantly lengthened the trial, since the trial court had already permitted one of the Westfall children to testify as well as the children's mother, albeit limiting the scope of their testimony to reflect the scope of Raina's cross-examination. As noted above, the court could have also taken reasonable steps to ensure that neither the testimony nor the cross-examination would last longer than necessary to adequately present the evidence. Second, the cross-examination Holley sought to present was sufficiently probative under established federal law; even if the cross-examination was "not certain to affect the jury's assessment of the witness's reliability or credibility[,] . . . it is sufficient that a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the cross-examination." *Fowler*, 421 F.3d at 1036 (quoting *Van Arsdall*, 475 U.S. at 679); *see also Davis*, 415 U.S. at 317 (holding that a court need not "speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted [the petitioner's] line of reasoning had counsel been permitted to fully present it"). Had the jury known of Raina's precociousness in sexual matters, as demonstrated by the comments she made to others, it might reasonably have questioned her statements, especially in light of the evidence that she and her brother had vowed to "get even" with Holley.

A showing of constitutional error under the Sixth Amendment only merits grant of the petition for habeas corpus if the error was not harmless, that is, if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). The trial court's error was not harmless, given the importance of Raina's testimony to the prosecution.

**[6]** Precluding cross-examination of a "central, indeed crucial" witness to the prosecution's case is not harmless error. *Olden v. Kentucky*, 488 U.S. 227, 232-33 (1988) (per curiam); *see also Davis*, 415 U.S. at 317-18. In this case, the prosecution had no physical evidence of the alleged sexual abuse, nor any corroboration of her testimony aside from the weak testimony offered by Matthew.[1] The State's case depended upon the jury believing Raina, as the prosecutor conceded during closing argument: "[T]here is no middle ground in this case. If the kids are telling the truth, Mr. Holley's guilty. If you believe they're lying, you should acquit."

**[7]** The prosecution needed to characterize Raina as a child who could be relied on to tell the whole truth, and not exaggerate or fantasize about sexual issues, and this characterization might reasonably have been put into question by the evidence of her prior statements. In his closing argument, the prosecutor characterized Raina as a "truthful little girl," "honest little girl," and a "good little girl" who is "trying to find the good in everybody." Because Raina's "accuracy and truthfulness" were key elements of the State's case, the jury might have received a "significantly different impression" of her credibility had Holley been allowed to introduce evidence of Raina's past statements and cross-examine her about them. *Van Arsdall*, 475 U.S. at 679; *Davis*, 415 U.S. at 319; *see Fowler*, 421 F.3d at 1041. The exclusion of evidence demonstrating Raina's propensity to fabricate therefore had a substantial and injurious effect or influence in Holley's guilty verdict. Put simply, Holley was denied a fair trial, and is therefore entitled to the writ of habeas corpus. *See Williams*, 529 U.S. at 375.

---

[1]Although Matthew supported most of Raina's claims, his testimony contradicted hers in places, and at all times was based on his view from the backseat of the car. Further, the record indicates that he had to be prompted and reminded of his testimony by a video recording made shortly after conferring with his sister. The record also shows that Matthew was very protective of his sister and eager to please her.

## B.  Due Process

[8] Each of Holley's remaining claims deal with admission of evidence, an issue of state law. Simple errors of state law do not warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67-68).

Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. *Musladin*, 549 U.S. at 77.

[9] The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams*, 529 U.S. at 375, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." *Musladin*, 549 U.S. at 77. Under the strict standards of AEDPA, we are therefore with-

out power to issue the writ on the basis of Holley's additional claims.[2]

---

[2]We note that, in spite of the lack of Supreme Court precedent on the issue, the trial court's admission of the pornographic materials resulted in a trial that was fundamentally unfair and would warrant issuance of the writ under this court's precedent. *See People of the Territory of Guam v. Shymanovitz*, 157 F.3d 1154, 1158-59 (9th Cir. 1998) (holding that the trial court erred in admitting evidence that the defendant kept sexually explicit gay adult magazines in his home, since that fact was irrelevant to the factual question of whether the defendant had physically and sexually abused a group of children under his supervision); *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993) (admission of evidence that defendant owned a knife collection was erroneous when there was no link between the collection and the crime). *But see United States v. Curtin*, 489 F.3d 935, 950-51 (9th Cir. 2007) (en banc) (evidence that the defendant was carrying stories about illicit relationships between older men and girls was relevant to the allegations against him that he intended to engage in a sexual act with a minor).

The trial court in this case admitted evidence of sexually explicit materials taken from Holley's bedroom over Holley's objection, including a matchbook cover titled "When I was a Year Old," which depicted a baby boy with unnaturally large genitals, and three pornographic magazines entitled "Barely Legal," "Baby Face," and "Barely 18." The magazines contained only images of adult women, no children. The jury could have drawn no permissible inferences from either the matchbook or the magazines. The matchbook, far from reflecting a sexual interest in prepubescent girls, reflects, if anything, an off-color sense of humor, as it "at best expressed a joke about a man's endowment." The magazines are similarly irrelevant, as they depict adult women, not prepubescent girls. The only inference to be made from these magazines is that Holley had a sexual interest in young-looking adult women.

Particularly in the absence of a limiting instruction, the likely influence of this evidence on the jurors was to persuade them that Holley had a dirty mind because he engaged in off-color humor and bought pornographic, and likely offensive, magazines. Holley was denied a fair trial as a result, because the evidence presented was both irrelevant and highly likely to be prejudicial, with a substantial and injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 638.

## CONCLUSION

**[10]** Clearly established federal law, as set forth by the Supreme Court in *Davis*, *Van Arsdall*, and *Lucas*, indicates that the trial court committed constitutional error by denying Holley the right to meaningful cross-examination of the prosecution's leading witness. As a consequence, the facts indicate that Holley was denied a fair trial. Holley was convicted and sentenced to eight years in prison, a sentence he has already served. Although habeas petitions are typically granted as a means of releasing the petitioner from custody, the federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968). Accordingly, we reverse and remand for issuance of the writ.

**REVERSED and REMANDED.**

Costs are awarded to Holley.