**Anthony George KNOWLES,**
**Petitioner,**

v.

**William MUNIZ, Warden, Respondent.**

Case No. CV 15-2948-DSF (SP)

United States District Court,
C.D. California.

Signed 01/17/2017

Anthony George Knowles, Soledad, CA, pro se.

Brendan John Sullivan, Herbert S. Tetef, CAAG—Office of the Attorney General California Department of Justice, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

### HONORABLE DALE S. FISCHER, UNITED STATES DISTRICT JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, records on file, and the Report and Recommendation of the United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report to which petitioner has objected. The Court accepts the findings and recommendation of the Magistrate Judge.

IT IS THEREFORE ORDERED that petitioner's Motion for Stay and Abeyance (docket no. 22) is denied, and Judgment be entered denying the Petition and dismissing this action with prejudice.

1. The facts set forth are drawn substantially verbatim from the California Court of Appeal's decision on direct appeal. Lodged Doc. No. 6 at 2-3. The Court of Appeal's statement

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHERI PYM, United States Magistrate Judge

This Report and Recommendation is submitted to the Honorable Dale S. Fischer, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

### I.

### INTRODUCTION

On April 21, 2015, petitioner Anthony George Knowles filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Petitioner challenges his 2009 convictions in the Los Angeles County Superior Court for three counts of robbery, one count of burglary, three counts of false imprisonment, and one count of possession of a firearm by a felon, for which he was sentenced to 103 years and four months to life in prison.

Petitioner raises two grounds for relief in the Petition: (1) the trial court violated petitioner's Sixth Amendment right to counsel and Fourteenth Amendment right to due process by removing his appointed counsel of choice; and (2) ineffective assistance of trial counsel for introducing prejudicial gang evidence at trial.

For the reasons discussed below, neither of petitioner's claims merits habeas relief. It is therefore recommended that the Petition be denied.

### II.

### STATEMENT OF FACTS [1]

of facts is presumed correct. 28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

Stephen Norris, petitioner's former co-defendant, testified at trial that petitioner and a fellow Crips gang member, Tony Martin, planned and executed a late-night armed robbery of a Rite-Aid store while Norris served as the getaway driver. Store surveillance video and three female store employees, who were tied up during the robbery, confirmed that two armed robbers, one in a brown ski mask and the other in a black ski mask, committed the robbery. Petitioner's DNA was found on a brown ski mask recovered from the abandoned getaway car.

## III.

## PROCEEDINGS

On December 11, 2009, a jury convicted petitioner of three counts of robbery (Cal. Penal Code § 211), one count of burglary (Cal. Penal Code § 459), three counts of false imprisonment (Cal. Penal Code § 236), and one count of possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)),[2] as well as found true gun use allegations (Cal. Penal Code §§ 1203.06(a)(1); 12022(a)(1); 12022.5(a); 12022.53(b)). Lodged Doc. No. 1 (Clerk's Transcript ("CT")) at 328-35, 1436-37. After hearing post-trial motions for a new trial and other matters that stretched over more than two years, on August 24, 2012, the trial court sentenced petitioner to 103 years and four months to life in prison. CT at 1436-38.

Petitioner, represented by counsel, appealed his convictions to the California Court of Appeal. Lodged Doc. No. 3. Petitioner raised the following arguments: (1) the trial court abused its discretion and violated petitioner's Sixth Amendment rights by removing appointed counsel; and (2) petitioner's trial counsel was ineffective

for introducing prejudicial gang evidence. *Id.* On January 22, 2014, the Court of Appeal, in a reasoned decision, affirmed the judgment. Lodged Doc. No. 6.

Petitioner filed a petition for review in the California Supreme Court, presenting the same two claims. Lodged Doc. No. 7. On April 30, 2014, the California Supreme Court summarily denied the petition for review. Lodged Doc. No. 8.

On April 21, 2015, petitioner filed the instant Petition in this court. Respondent filed an Answer on November 9, 2015. Respondent argues, inter alia, that the due process subclaim in Ground One is unexhausted, but also addresses that and other claims on the merits.

On December 14, 2015, petitioner filed a motion for stay and abeyance ("Stay Motion"). Petitioner asks the court to stay this action to give him time to exhaust the due process subclaim. Respondent opposed the Stay Motion on January 12, 2016. Petitioner filed a reply on February 1, 2016 ("Stay Reply").

After petitioner filed the Stay Motion, the court issued a minute order stating it would not hold the deadline for petitioner to reply to respondent's Answer in abeyance. Accordingly, on April 15, 2016, petitioner filed a Traverse to the Answer.

## IV.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim—

---

**2.** This section has since been repealed and replaced with California Penal Code

§ 29800(a)(1).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

■ In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the California Court of Appeal's decision on January 22, 2014 stands as the last reasoned decision on Ground One, to the extent petitioner argues abuse of discretion, and on Ground Two.

■ Despite petitioner presenting the state courts with a Sixth Amendment claim in Ground One, the California Court of Appeal did not address the Sixth Amendment issue in its reasoned decision. With respect to a claim for which there is no reasoned state court decision, the federal habeas court will conduct an "independent review" of the record to determine whether the state court decision was contrary to, or an unreasonable application of, controlling United States Supreme Court precedent. *See Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011); *Allen v. Ornoski*, 435 F.3d 946, 954-55 (9th Cir. 2006). Even in the absence of a prior reasoned decision, however, § 2254(d)'s limitations on granting habeas relief remain. *Harrington v. Richter*, 562 U.S. 86, 98, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Because there is no reasoned decision on the Sixth Amendment issue raised in Ground One, this court conducts an independent review of the record to determine whether the state court decision was objectively unreasonable as to that issue.

Finally, petitioner failed to exhaust the due process subclaim he now makes in Ground One; he did not present this subclaim to either the California Court of Appeal or California Supreme Court. *See* Lodged Doc. Nos. 3, 7. Consequently, the California Court of Appeal did not address this issue either, nor could the California Supreme Court have considered it. *See* Lodged Doc. Nos. 6, 8. But because petitioner does not present even a colorable claim for relief, the court addresses this subclaim on the merits notwithstanding petitioner's failure to exhaust. *See Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005); 28 U.S.C. § 2254(b)(2). In doing so, the court reviews petitioner's claim de novo. *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004) ("*De novo* review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits.").

## V.

## DISCUSSION

### A. Petitioner Is Not Entitled to a Stay of These Proceedings

■ A state prisoner must exhaust his or her state court remedies before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To satisfy the exhaustion requirement, a habeas petitioner must fairly present his or her federal claims in the state courts in

order to give the state the opportunity to pass upon and correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam). For a petitioner in California state custody, this generally means that the petitioner must have fairly presented his or her claims in a petition to the California Supreme Court. *See O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728 (interpreting 28 U.S.C. § 2254(c)); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (applying *O'Sullivan* to California).

Respondent argues Ground One is unexhausted to the extent petitioner claims the trial court's removal of appointed counsel violated petitioner's due process rights. Answer at 14. As discussed above, the court agrees the due process subclaim is unexhausted. *See* Lodged Doc. No. 7. In response, petitioner has asked the court to stay these proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), and *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), and to hold this action in abeyance while petitioner exhausts the subclaim. Stay Motion at 2-4.

■■■ Under *Rhines*, a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528. Additionally, a stay is not warranted "when the unexhausted claims are plainly meritless," or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id.* at 277-78, 125 S.Ct. 1528.

■■■ A petition also may be stayed pursuant to the procedure set forth by the Ninth Circuit in *Kelly v. Small*, 315 F.3d 1063. Under *Kelly*, the petitioner must follow a three-step procedure: (1) the petitioner files an amended petition deleting the unexhausted claims; (2) the district court stays and holds in abeyance the fully exhausted petition; and (3) the petitioner later amends the petition to include the newly exhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009). A *Kelly* stay does not require a showing of good cause. *Id.* at 1140. But a *Kelly* stay will be denied when the court finds such a stay would be futile. *See Richson v. Biter*, 2015 WL 5031916, *8 (C.D. Cal. Aug. 24, 2015). Futility would exist if the petitioner seeks a stay to exhaust a meritless claim. Indeed, the purpose of the *Kelly* stay procedure is to allow for a stay "when *valid* claims would otherwise by forfeited." *Kelly*, 315 F.3d at 1070 (emphasis added); *cf. Rhines*, 544 U.S. at 277, 125 S.Ct. 1528 (holding it is an abuse of discretion to grant stay on plainly meritless claims).

■■■ Here, petitioner offered no justification in his Stay Motion for his failure to exhaust his claim. In his reply in support of his Stay Motion, he suggests he has good cause for a stay because he attempted to exhaust the subclaim by filing a habeas petition in the Superior Court in 2012, which the Superior Court has never adjudicated. Stay Reply at 2. He points to the state habeas petition attached to the instant federal Petition as Exhibit C, which shows it was filed in the Superior Court on July 20, 2012, before petitioner was even sentenced in this case. Even if it is correct that the Superior Court never ruled on this likely premature habeas petition, that does not explain petitioner's failure to exhaust his due process subclaim in the state courts in the years following entry of a judgment against him. Thus, petitioner has failed to establish good cause so as to warrant a stay under *Rhines*.

Moreover, even if petitioner had good cause, he is not entitled to a stay under either *Rhines* or *Kelly* because his due

process subclaim is plainly meritless on federal habeas review. As discussed more fully in Section V.B.3 below, petitioner's claim fails even under de novo review because he has not established a due process right to the appointment of counsel of his choice, or to a hearing on the same. And if the court were to stay the action and review petitioner's claim after petitioner exhausted it in state court, the court would be required to apply AEDPA deference when analyzing the claim, making petitioner's burden higher than it currently is on this claim. Because petitioner has not presented any precedent supporting his due process argument, he certainly cannot show that such a due process right exists under clearly established supreme court precedent, as required under AEDPA. Petitioner's claim is plainly meritless now under de novo review, and would be all the more meritless on post-exhaustion review under AEDPA.

In sum, petitioner has failed to demonstrate good cause for his failure to exhaust, and in any event the unexhausted claim is plainly meritless. As such, petitioner's request for a stay should be denied.

## B. Petitioner Is Not Entitled to Habeas Relief on His Claim Regarding the Appointment of Counsel of Choice

In Ground One, petitioner argues the trial court violated his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process by removing his preferred appointed counsel and appointing new counsel. Petition, Attachment A at 1-7.[3]

Attorney Ronald Kaye represented petitioner through the preliminary hearing stage of petitioner's case, a five-month period of representation. CT at 77. Mr. Kaye was retained by petitioner's brother to represent petitioner through the preliminary hearing. *Id.* After the preliminary hearing, petitioner and his family could not longer afford retained counsel. *Id.* At petitioner's request, Mr. Kaye moved the trial court to be appointed to represent petitioner at trial. CT at 75-76. Mr. Kaye cited his extensive knowledge of petitioner's case, and noted that since the public defender's office and the alternate public defender's office would have conflicts in representing petitioner, the alternative to having Mr. Kaye continue to represent petitioner would be appointing a member of the indigent bar panel. CT at 77-78, 80-81. Mr. Kaye stated he was willing to accept appointment "if an acceptable rate of compensation can be agreed upon." CT at 78. On October 8, 2008, the trial court granted Mr. Kaye's motion to be appointed as petitioner's trial counsel. CT at 97.

Mr. Kaye continued to represent petitioner for nearly three more weeks, until, on October 28, 2008, the trial court removed him and replaced him with Christopher Chaney of the indigent bar panel. The minute order from October 28, 2008 simply states: "Private counsel relieved on this date. Bar panel appointed." CT at 99. The Reporter's Transcript only states that petitioner was "represented by Mr. Chaney of the I.C.D.A." and "Mr. Kaye said he would bring the discovery by Thursday." Lodged Doc. No. 2 (Reporter's Transcript ("RT")) at A-1. Mr. Chaney proceeded to represent petitioner at trial.

Six months after his conviction at trial, petitioner began representing himself. CT at 358. Petitioner eventually filed a motion for a new trial based in part on the trial court's removal of Mr. Kaye as his counsel.

---

3. Petitioner did not number the pages of Attachment A. The court numbers the pages consecutively for identification.

CT at 409-34. In a declaration submitted in support of the new trial motion, Mr. Kaye stated in part:

On October 28, 2008, I appeared in Department H for a pretrial status conference. On October 24, 2008, based on the Court's October 8, 2008 order appointing me to represent Mr. Knowles, I filed several under seal documents with the Court requesting funds for my representation, both setting out my proposed billing rate for my representation for a three strikes case and for hiring experts. At that pretrial status conference the Court advised me that it had spoken with representatives of the Los Angeles Superior Court in downtown Los Angeles, and that the policy of the court was that indigent defendants had to be represented by the Indigent Criminal Defense Panel of the Los Angeles County Bar Association. Consequently, I was ordered by the Court that I could no longer represent Mr. Knowles as appointed counsel.

CT at 1064-65. The trial court denied the motion for a new trial. CT at 1310.

On direct appeal, petitioner argued the trial court abused its discretion and violated his Sixth Amendment rights by relieving Mr. Kaye as counsel after it had appointed him as counsel for petitioner. The California Court of Appeal rejected petitioner's claim that the trial court abused its discretion, finding the record was insufficient to rebut the presumption that the trial court acted within its discretion. Lodged Doc. No. 6 at 6-7.

██ Petitioner's claim in Ground One of the instant federal Petition is largely a claim of state law error, as he primarily cites to state law. *See* Petition, Attachment A at 5-6. To the extent petitioner's claim is based on state law, it is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). To the extent petition-er claims federal constitutional error, his claim still fails, for the reasons that follow.

### 1. Ground One Is Barred by *Teague*

Respondent first argues petitioner's claim is barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Answer at 11-13.

██ Under *Teague*, a new rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless: (1) the new rule forbids criminal punishment of "primary, private individual conduct"; or (2) is a "watershed rule[ ] of criminal procedure." *Caspari v. Bohlen*, 510 U.S. 383, 389, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (internal quotation marks and citations omitted). Since respondent has properly raised a *Teague* issue, the court must consider that issue first before considering the merits of this claim. *See Horn v. Banks*, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (per curiam) (where *Teague* issue properly raised by state, habeas court must consider *Teague* issue before merits of claim).

██ The Ninth Circuit has held that, in order to assert a *Teague* claim, at a minimum: (1) "*Teague* should be identified as an issue (indeed the first issue)"; (2) "the new rule of constitutional law that falls within its proscription should be articulated"; (3) "the reasons why such a rule would not have been compelled by existing precedent should be explained with particular reference to the appropriate universe of precedent"; and (4) "an argument should be made why the rule contended for is not within one of *Teague*'s exceptions." *Arredondo v. Ortiz*, 365 F.3d 778, 781-82 (9th Cir. 2004). *Teague* applies where a habeas claim would require the announcement of a new rule. *See Saffle v. Parks*, 494 U.S. 484, 487-88, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("on collater-

al review, we must first determine whether the relief sought would create a new rule under … *Teague*"); *see also Stringer v. Black*, 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) ("[I]f the decision [relied upon] did not announce a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent.") (citation omitted). In other words, for *Teague* to apply "[t]he 'rule' need not already have been announced by the United States Supreme Court." *Tirado v. Warden*, 576 F.Supp.2d 1104, 1110 (C.D. Cal. 2008).

 Here, respondent argues that *Teague* bars petitioner's claim because it would create a new rule of constitutional law, namely, that petitioner had a right to *appointed* counsel of his choice protected by the Sixth and Fourteenth Amendments. Answer at 11-12. Respondent contends the Supreme Court has never announced such a rule and that it would not fall under either of the *Teague* exceptions. *Id.* at 12-13. The court agrees. As explained below, there is no legal precedent supporting petitioner's claimed rights under the Sixth and Fourteenth Amendments. To grant relief on this claim would therefore create a new constitutional rule.

 Further, such a new rule would not fit within either of the two narrow exceptions to the *Teague* non-retroactivity rule. First, the proposed new rule is not one that places a class of private conduct beyond the power of the State to proscribe, or addresses a substantive categorical guarantee accorded by the Constitution, or de-criminalizes a class of conduct. *See Teague*, 489 U.S. at 307, 311, 109 S.Ct. 1060. Second, the proposed new rule does not fit within the other exception, for "watershed rules of criminal procedure, implicating the fundamental fairness and accuracy of the criminal pro-

ceeding." *See Saffle*, 494 U.S. at 495, 110 S.Ct. 1257 (internal quotation marks and citation omitted). To qualify for this second exception, a new rule must meet two conditions: (1) it must relate to the accuracy of the conviction; and (2) it must also "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (internal quotation marks and citation omitted); *see also Butler v. McKellar*, 494 U.S. 407, 416, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (this exception is meant to apply to those procedures without which the accuracy of a conviction would be seriously diminished). The new rule that would be created here does not meet these conditions.

Accordingly, *Teague* bars Ground One. And even if not *Teague*-barred, Ground One's two subclaims lack merit, as discussed below.

### 2. The Sixth Amendment Subclaim Lacks Merit

 The United States Supreme Court has held that the Sixth Amendment contains two distinct rights: "the right to effective assistance of counsel" and "the right to select counsel of one's choice." *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 146-48, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *see also U.S. v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010) ("The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel.") (quotations omitted). The first of these rights continues to apply for indigent defendants who require court-appointed counsel: they have the right to effective assistance by their appointed counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

But the second right is more limited. Among other limitations, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151, 126 S.Ct. 2557; *see Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (petitioner could not "defensibly . . . assert that impecunious defendants have a Sixth Amendment right to choose their counsel"); *Wheat v. U.S.*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (under the Sixth Amendment, "a defendant may not insist on representation by an attorney he cannot afford"). Thus, "those who do not have the means to hire their own lawyers have no cognizable complaint" under the Sixth Amendment "so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624, 109 S.Ct. 2646.

Here, petitioner required court-appointed counsel, and there is no Sixth Amendment right to appointed counsel of his choice. Accordingly, he cannot establish a Sixth Amendment violation on the basis of the trial court's removal of petitioner's preferred counsel.

To the extent petitioner also argues he should have been allowed to keep his previously retained counsel as his appointed counsel because they had formed a relationship, there was still no Sixth Amendment violation. Petitioner points to no clearly established Supreme Court precedent to support this position. And the law is in fact clear that a defendant does not have a Sixth Amendment right to a meaningful relationship with defense counsel. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008).

In short, there is no legal basis for petitioner's Sixth Amendment claim.

### 3. The Due Process Subclaim Lacks Merit

The Fourteenth Amendment's Due Process Clause protects against the "arbitrary deprivation" of a liberty interest to which a defendant is "entitled under state law." *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000). "'A liberty interest may arise from either of two sources: the due process clause itself or state law.'" *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (citation omitted). However, "[i]n order to create a constitutionally protected liberty interest, a statute must contain explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations substantive predicates are present, a particular outcome must follow." *Carver*, 558 F.3d at 874-75 (citations and internal quotation marks omitted).

Here, petitioner has not pointed to any liberty interest in the appointment of preferred counsel created by the Due Process Clause itself, or, for that matter, any other provision of the United States Constitution. In fact, as just explained, it is clearly established that there is no right to appointed counsel of one's choice under the Sixth Amendment. Moreover, while the state statutes regulating the appointment of counsel in California, Penal Code §§ 987-987.2, lay out the process for appointing counsel, they do not speak to any potential right of a criminal defendant to the appointment of counsel chosen by the defendant. Because petitioner had no liberty interest in the appointment of counsel of his choice, due process does not serve to ensure the appointment of such preferred counsel.

Petitioner's due process argument appears chiefly to be that he was deprived of due process because no hearing was held

concerning the removal of Mr. Kaye as his appointed attorney. The record reflects Mr. Kaye was removed as counsel at a pretrial conference held on October 28, 2008, and Mr. Chaney was appointed to take his place. CT at 99. As such, there was a hearing, with petitioner present, and there is no indication petitioner objected to the substitution of counsel. *See* CT at 99; RT at A-1. Nonetheless, petitioner is correct that the matter of relieving Mr. Kaye as counsel appears to have been done off the record, with no discussion on the record as to the reasons for his removal. *See* RT at A-1.

■ In any event, petitioner's claim fails because he offers no authority showing he was constitutionally entitled to a hearing concerning whether counsel should be removed. Petitioner points to *Bradley v. Henry*, 510 F.3d 1093, 1097-99 (9th Cir. 2007), but that case involved a court relieving *retained* counsel of the petitioner's choice without a hearing when the petitioner maintained she could afford to pay for counsel. The Sixth Amendment of course does afford a defendant the right to retain counsel of his or her choice. But petitioner here was not deprived of the right to continue to retain Mr. Kaye at petitioner's own expense. Even assuming petitioner was entitled to a hearing on the matter under state law, "[t]he denial of state-created procedural rights is not cognizable on habeas review unless there is some deprivation of a substantive right protected by the Constitution." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)). Again, as discussed, petitioner had no constitutional right to appointed counsel of his choice, and therefore the removal of the appointed counsel of his choice without a hearing was not due process violation.

Moreover, petitioner has not shown that the trial court's removal of the counsel petitioner preferred, with or without a hearing, rendered the trial so fundamentally unfair as to violate due process. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (explaining that the Due Process Clause will support habeas relief when constitutional errors have rendered a trial fundamentally unfair). Here, petitioner was not left without counsel. Rather, he was appointed a qualified and capable defense attorney. In fact, petitioner has alleged only one instance in which he believes his appointed counsel did not properly represent him, which the court rejects below. Under these circumstances, the court cannot find petitioner's trial was so fundamentally unfair as to violate due process.

For all the foregoing reasons, petitioner is not entitled to relief on Ground One.

## C. Petitioner Is Not Entitled to Habeas Relief on His Claim of Ineffective Assistance of Counsel

In Ground Two, petitioner claims his trial counsel was ineffective for introducing prejudicial gang evidence and opening the door for the prosecution to present additional gang evidence, even after counsel had successfully moved to have such evidence excluded from trial. Petition, Attachment A at 7-10.

Before trial, petitioner's counsel moved the trial court to exclude testimony regarding "the behavior and membership in street gangs." CT at 211-16. The prosecutor represented she did not intend to present gang evidence at trial. RT at C-13. Petitioner's counsel accepted the prosecutor's representation and asked that the trial court hold a hearing at a later time if the prosecutor decided to seek the admission of gang evidence; the trial court agreed. RT at C-14.

At trial, the prosecution called Stephen Norris, the getaway driver, as a witness.

RT at 1294. Before he testified, and outside the presence of the jury, the prosecutor and the court advised Norris that he was not allowed to make any reference to any gang membership, by order of the court. RT at 1292-93.

When petitioner's counsel was cross-examining Norris, counsel asked if Norris told police that petitioner had been at Norris's house on the day of the crime, and confronted him with the fact that Norris initially did not include petitioner among the people he said were at the house. RT at 1568. Norris said he told police petitioner was there, but that when talking to police he referred to petitioner by the name "Bones." *Id.* The parties immediately met at sidebar for conference with the trial court, during which the prosecutor expressed a concern that the questioning would lead to the presentation of gang evidence, which the defense had sought to exclude, because the reason Norris did not initially state petitioner was there was due to petitioner's position within the gang. RT at 1568-69. The trial court warned petitioner's counsel that continuing the line of questioning could result in opening the door to the prosecution presenting additional gang evidence, as the court would allow the prosecutor to ask Norris to clarify his responses. RT at 1569-70. The court told counsel that if he continued the line of questioning it would be "at [his] peril." RT at 1570.

Later, petitioner's counsel cross examined Norris about his motives for confessing and cooperating with police, including that officers had told him he was facing a possible sentence of life in prison, but that he also had an opportunity to go free. RT at 1579-80. Petitioner's counsel asked Norris if he told police he got involved in the crime "because [he] thought that [petitioner] and Mr. Martin were gang bangers?" RT at 1581. Norris stated he did not know if he made such a claim to police. *Id.*

Norris admitted telling the police he reluctantly involved himself in the crime because he was afraid of petitioner and Tony Martin. *Id.*

The prosecutor again alerted the trial court to the fact that the defense was asking Norris about gang matters which the court excluded, and about which Norris was instructed not testify, putting Norris in a difficult position when answering counsel's questions. RT at 1582. Petitioner's counsel responded:

I just made the decision based upon our last side bar, that I believe that there was a possibility that the court was going to allow [gang] testimony to come in. So although the court previously ruled that we could keep it out, I opened the door to it purposely....

RT at 1582-83. Counsel further explained that he opened the door to gang evidence so as to impeach Norris's credibility because on direct examination Norris gave a difference explanation for why he got involved in the crime. RT at 1583. The trial court ruled that petitioner's counsel had opened the door to the admission by the prosecution of additional gang evidence. RT at 1583-85.

Later, the prosecutor asked Norris if petitioner was affiliated with a gang, and Norris answer that petitioner was a member of the Raymond Crips. RT at 1616. The prosecutor then asked Norris whether petitioner's gang affiliation played a role in causing Norris to become involved in the crime; Norris replied, "Somewhat." *Id.* When Norris began to explain his answer, petitioner's counsel asked to address the trial court at sidebar. RT at 1616-17. Petitioner's counsel expressed his concern that they were opening the door too wide to the admission of gang evidence. RT at 1617-18. Counsel argued it was the prosecutor who had opened the door by asking a question that invited Norris to given an incorrect

answer, whereas petitioner's counsel made "a strategic decision to ask about the questions, not knowing that the reason [Norris] lied to the police [was] supposedly he was afraid because [petitioner] has a gang affiliation." RT at 1618. The trial court ruled that the defense had opened the door and that it could not be reclosed. RT at 1622. Petitioner's counsel then stated again that he made the decision to present the gang evidence to impeach Norris based on Norris's answers to the prosecutor's questions, which answers "apparently have proven to be disingenuous." RT at 1623.

The prosecutor proceeded to question Norris regarding the involvement of petitioner and accomplice Martin in the Raymond Crips. RT at 1624-26, 1802-03, 1807. During closing arguments, both parties briefly mentioned the inconsistencies of Norris's statements as they related to involving himself in the crime out of fear because petitioner was a gang member. RT at 1875, 1884-87.

 The Sixth Amendment guarantees a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish an ineffective assistance of counsel claim, a petitioner must establish: (1) counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. "The inquiry under *Strickland* is highly deferential and 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Greenway v. Schriro*, 653 F.3d 790, 802 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052); *see also Earp v. Cullen*, 623 F.3d 1065, 1074 (9th Cir. 2010).

 Regarding the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. As for the second prong, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Id.* at 694, 104 S.Ct. 2052; *Towery v. Schriro*, 641 F.3d 300, 315 (9th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). The focus of the prejudice inquiry is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Here, the California Court of Appeal rejected petitioner's ineffective assistance claim on direct review. It did not reach the prejudice prong, but found counsel's performance did not fall below a reasonable standard of professional assistance:

In this case, the record shows that defense counsel was faced with a difficult tactical decision during his cross-examination of Norris because the reason Norris gave at trial for participating in the robbery was different than the reason he had previously given investigators—i.e., he participated out of fear of defendant's gang membership. Norris was a key prosecution witness who participated in the robbery and identified defendant as one of the armed robbers. His credibility was therefore a crucial issue for the jury. Thus, it was not unreasonable under professional norms for defense counsel to conclude that impeaching Norris with his prior inconsistent statements to police was necessary to further undermine Norris's credibili-

ty. That the impeachment would involve eliciting information about defendant's gang membership did not, by itself, make defense counsel's tactical choice unreasonable. The record supports an inference that defense counsel was aware of the risk involved in impeaching Norris with his prior statements about defendant's gang membership and that he rationally balanced that risk against the benefit to be derived from impeaching Norris and arguing to the jury that he was an unreliable witness.

Given the strong presumption that defense counsel's choice fell within a wide range of reasonable professional assistance, we must defer on this record to defense counsel's difficult choice in this instance and cannot second guess that choice in the harsh light of hindsight. When all the circumstances surrounding defense counsel's tactical choice are viewed from his perspective, and in the context of the available facts, that tactical choice does not, on this record, appear to fall below prevailing professional norms, such that we can conclude on direct appeal that there was ineffective assistance of counsel.

Lodged Doc. No. 6 at 17-18. This was not an unreasonable determination.

■ As set forth above, petitioner's trial counsel stated he made a strategic decision to open the door to gang evidence. Counsel's stated strategy for presenting the gang evidence was to highlight the inconsistencies in Norris's statements. Where the prosecution relied heavily on the testimony of Norris to prove petitioner's involvement in the crime, it was not unreasonable for petitioner's counsel to use any opportunity to impeach Norris's credibility. This is particularly true where the tactical decision resulted only in the presentation of gang evidence that was relatively mild. The evidence showed simply that petitioner belonged to a gang and

that Norris claimed to have participated in the crime because he feared petitioner due to that gang membership, largely in an attempt to minimize his own culpability.

Even if the court were to find this to be an unreasonable strategy, petitioner cannot show he was prejudiced by counsel's decision in light of the overwhelming evidence of petitioner's guilt. The Rite Aid store was robbed by two men, one wearing a brown ski mask. RT at 622-24, 629, 633-34, 947-48, 1821. Police chased a vehicle away from the scene of the crime and, after the vehicle was abandoned, the police found a brown ski mask in the vehicle. RT at 967-75, 78-79, 1251-53, 1256, 1261. Petitioner's DNA was on the mask. RT at 1027-29. In addition, Norris told police and testified at trial that petitioner was involved in the crime. RT at 1516-20, 1530, 1560-61, 1586-88, 1591, 1613-15. Given this evidence of petitioner's guilt, evidence that petitioner was a gang member could not have had substantial and injurious effect or have rendered the trial fundamentally unfair. *See Brecht v. Abrahamson*, 507 U.S. 619, 623, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (to obtain habeas relief, the trial error must have " 'had substantial and injurious effect or influence' "); *see also Holley*, 568 F.3d at 1101.

But even without considering the lack of prejudice, the California Court of Appeal's denial of petitioner's ineffective assistance of counsel claim was not contrary to clearly established federal law or an unreasonable determination of the facts. As such, petitioner is not entitled to relief on Ground Two.

### D. Petitioner Is Not Entitled to an Evidentiary Hearing

■ Finally, petitioner requests that the court conduct an evidentiary hearing on petitioner's claims. Petition at 8. An evidentiary hearing is not warranted

where, as here, "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Schrirro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). Petitioner's request for an evidentiary hearing should therefore be denied.

## VI.

### RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) denying petitioner's Motion for Stay and Abeyance (docket no. 22); and (3) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.