**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT JURADO,
*Petitioner-Appellant*,

v.

RONALD DAVIS, Warden, San Quentin State Prison,
*Respondent-Appellee.*

No. 18-99009

D.C. No.
3:08-cv-01400-JLS-JMA

OPINION

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted June 23, 2021
Pasadena, California

Filed September 10, 2021

Before: Sidney R. Thomas, Chief Judge, and Susan P. Graber and Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Thomas

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's judgment denying Robert Jurado's habeas corpus petition challenging his first-degree murder conviction and death sentence.

The panel held that the California Supreme Court's conclusion that the Double Jeopardy Clause did not bar further prosecution of Jurado was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d). After Jurado's indictment, the state trial court granted Jurado's motion to set aside the lying-in-wait special circumstance based on insufficiency of the evidence, and Jurado pleaded guilty to all pending charges. The California Court of Appeal held that the special circumstance had been improperly dismissed, and that the double jeopardy bar posed no bar to its reinstatement, relying on *Ohio v. Johnson*, 467 U.S. 493 (1984). The California Supreme Court denied Jurado's petition for review. Jurado then withdrew his guilty plea, entered a plea of not guilty, and was convicted at trial. The panel wrote that, as in *Johnson*, the Double Jeopardy Clause is not implicated because Jurado was not subject to multiple punishments for the same offense, and the special circumstance was an included part and parcel of the initial prosecution.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the California Supreme Court's conclusion that the admission at trial of the videotaped conditional examination of Brian Johnsen (the victim's boyfriend at the time of her murder) did not violate Jurado's rights to due process and to a reliable penalty determination was not an unreasonable determination of the facts within the meaning of 18 U.S.C. § 2254(d)(2), where the prosecutor submitted a declaration that Johnsen's life would be at risk if he testified, and Jurado and his counsel had a full and fair opportunity to cross-examine Johnsen during the conditional examination.

The panel held that the California Supreme Court's conclusion that Jurado's constitutional rights were not violated by Steven Baldwin's testimony regarding Denise Shigemura's out-of-court statements was not an unreasonable determination of the facts or an unreasonable application of clearly established facts. The panel wrote that the California Supreme Court did not rely on an unreasonable determination of the facts or an unreasonable application of clearly established federal law in concluding that the trial court's admission of Shigemura's pre-crime statement amounted to harmless error, or that her post-crime statement was properly admitted as an adoptive admission. The panel wrote that admission of the post-crime statement likewise did not violate Jurado's clearly established Confrontation Clause rights.

The panel held that the California Supreme Court's conclusion that the trial court's penalty-phase exclusion of Jurado's videotaped confession to police officers did not violate Jurado's right to a fair trial and reliable penalty determination, because capital defendants have no constitutional right to the admission of evidence lacking trustworthiness, did not rest on an unreasonable determination

of the facts or an unreasonable application of clearly established federal law.

The panel held that the California Supreme Court's conclusion that the admission at the penalty phase that the victim was seventeen weeks pregnant at the time she was killed did not violate Jurado's constitutional to right to a fundamentally fair sentencing hearing was not contrary to, or an unreasonable application of, Supreme Court precedent.

The panel held that the California Supreme Court's conclusion that Jurado's rights to due process, a fair penalty trial, and a reliable sentence were not violated by the admission of evidence concerning Jurado's prior incidents of violence was not contrary to and did not involve an unreasonable application of clearly established federal law.

The panel held that the California Supreme Court's rejection of Jurado's challenge to the jury instructions was not contrary to or an unreasonable application of clearly established federal law. The panel wrote that the trial court's failure to instruct the jury *sua sponte* on the law of assault and aiding and abetting liability did not so infect the sentencing proceedings such that Jurado's sentence violates due process. The panel wrote that even assuming that counsel's failure to request the instruction constituted ineffective assistance, Jurado cannot demonstrate prejudice because the state court reasonably could have concluded that the evidence of aiding and abetting was overwhelming.

The panel held that the California Supreme Court's rejection of Jurado's ineffective assistance of counsel claim based on his attorney's concession that Jurado intentionally

killed the victim was not contrary to or an unreasonable application of clearly established federal law.

The panel held that the California Supreme Court's rejection of Jurado's claim of ineffective assistance of counsel at the penalty phase was not contrary to or an unreasonable application of clearly established federal law. The panel did not need to reach the issue of whether counsel's performance was deficient, as Jurado has not adequately established that any of counsel's alleged deficiencies resulted in prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).

Finally, the panel held that the district court did not abuse its discretion in denying Jurado's request for evidentiary development, discovery, and an evidentiary hearing.

## COUNSEL

Stephen M. Lathrop (argued), Lathrop & Villa, Rolling Hills Estates, California; Robert E. Boyce (argued), Boyce & Schaefer, San Diego, California; for Petitioner-Appellant.

Marvin E. Mizell (argued) and Ronald A. Jakob, Deputy Attorneys General; Ronald S. Matthias, Senior Assistant Attorney General; Rob Bonta, Attorney General; Attorney General's Office, San Diego, California; for Respondent-Appellee.

## OPINION

THOMAS, Chief Judge:

Robert Jurado, a California inmate on death row, appeals the district court's denial of his petition for writ of habeas corpus. We review *de novo* a district court's denial of a habeas corpus petition and review for clear error any factual findings made by the district court. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). We review for abuse of discretion a district court's decision whether to conduct an evidentiary hearing. *Stanley v. Cullen*, 633 F.3d 852, 863 (9th Cir. 2011).

Because Jurado's petition was filed in the district court after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "we may grant habeas relief only if the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court . . . ; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2004)(quoting 28 U.S.C. § 2254(d)).

"A state court decision is 'contrary to' clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases *or* if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004). A state court's decision is an "unreasonable application" of federal law if it "identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quotations and citation omitted). The Supreme Court has explained that the exceptions based on "clearly established" law refer only to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000).

With respect to § 2254(d)(2) claims, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* As amended by AEDPA, § 2254(d) "preserves authority to issue the writ [only] in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no further." *Id.* Under AEDPA, then, habeas corpus is a guard only "against extreme malfunctions in the state criminal justice systems," and is not a means for "ordinary error correction through appeal." *Id.* at 103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Applying these standards, we affirm the judgment of the district court.

## I

On May 17, 1991, Teresa Holloway's body was found off of Highway 163 in San Diego County. The cause of death was determined to be "blunt force head injuries and strangulation."

According to the evidence adduced at trial, Petitioner Robert Jurado and his roommate, Denise Shigemura, hatched a plan to kill a drug dealer named Doug Mynatt, with whom the two had an ongoing dispute. Jurado and Shigemura became concerned that their acquaintance and Mynatt's former roommate, Teresa Holloway, would reveal their plan. Jurado, Shigemura, and Jurado's girlfriend, Anna Humiston, apparently killed Holloway in a car by strangling her with an 18-inch weed-eating cord and beating her with the car's scissor-jack. Jurado was interviewed by police soon after the murder, and he confessed to killing Holloway, cooperated with law enforcement, and took police to the scene of the crime where they located the tire jack.

Jurado was indicted on one count of conspiracy to commit murder and one count of first degree murder committed while lying in wait, a special circumstance that made him eligible for the death penalty. Jurado was tried separately from his co-defendants, Shigemura and Humiston. The jury convicted him of first degree murder and determined that death was the appropriate penalty. After denying a motion for new trial and to modify the verdict, the trial court sentenced Jurado to death.

The California Supreme Court affirmed the judgment in *People v. Jurado*, 38 Cal. 4th 72 (2006). Jurado petitioned for writ of certiorari, and the Supreme Court of the United States denied Jurado's petition in *Jurado v. California*, 549 U.S. 956 (2006). While his direct appeal was pending, Jurado filed a state habeas petition in the California Supreme Court, which was denied without an evidentiary hearing.

Jurado's first federal habeas petition was stayed in order to allow him to exhaust his claims in state court. The California Supreme Court subsequently denied his second state petition.

The district court denied habeas relief on Jurado's second amended federal habeas petition, and also denied his motions for investigation, evidentiary development, and an evidentiary hearing. The district court subsequently issued a certificate of appealability, and stayed execution pending appeal. This timely appeal followed.

II

A

The California Supreme Court's conclusion that the Double Jeopardy Clause did not bar further prosecution of Jurado was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts within the meaning of § 2254(d).

After Jurado's indictment, the state trial court granted Jurado's motion to set aside the special circumstance based on insufficiency of the evidence, and Jurado immediately pleaded guilty to all pending charges. The prosecutor

acknowledged that Jurado "can plead to the face at any time," but indicated that "the People would not be signing the change of plea form," and specified that "there's a possibility that the People may take a writ on the ruling by the court." Additionally, the prosecutor noted that he "wanted counsel to be aware that the plea could conceivably be set aside at a later time depending on how that procedure goes."

The following month, the prosecution sought reinstatement of the special circumstance allegation in the California Court of Appeal. *People v. Superior Court (Jurado)*, 4 Cal. App. 4th 1217 (1992). The Court of Appeal held that the special circumstance had been improperly dismissed. *See id.* at 1229. The Court of Appeal further held that double jeopardy posed no bar to the reinstatement of the special circumstance, relying on *Ohio v. Johnson*, 467 U.S. 493, 500–02 (1984) (holding double jeopardy did not bar prosecution of more serious crimes when defendant pleaded to less serious crimes). *Id.* at 1229–30. The California Supreme Court denied Jurado's petition for review, and Jurado withdrew his guilty plea and entered a plea of not guilty. Jurado raised this issue again on direct appeal, and the California Supreme Court rejected it, relying on *Johnson*.

In *Johnson*, the defendant was indicted on one count of murder, one count of involuntary manslaughter, one count of aggravated robbery, and one count of grand theft. *Id.* at 495. At his arraignment, the defendant offered to plead guilty to the involuntary manslaughter and grand theft charges, and despite the prosecutor's objection, the trial court accepted the guilty pleas and sentenced the defendant to a term of imprisonment. *Id.* at 496. The defendant subsequently requested that the trial court dismiss the murder and aggravated robbery charges on the ground that involuntary

manslaughter and grand theft were lesser included offenses, and that the continued prosecution of the greater offenses after acceptance of the defendant's guilty pleas on the lesser offenses was barred by the Double Jeopardy Clause. *Id.* The trial court dismissed the charges and the Ohio Court of Appeals and the Ohio Supreme Court affirmed because under Ohio law, a defendant can only be found guilty of either murder or involuntary manslaughter (but not both), and either aggravated robbery or grand theft (but not both). *Id.* at 496–97.

The Supreme Court reversed. It concluded that, contrary to the Ohio Supreme Court's determination, the case did not concern the double jeopardy protection prohibiting multiple punishments for the same offense. *Id.* at 497. It found that the "trial court's dismissal of [the] more serious charges did more than simply prevent the imposition of cumulative punishments; it halted completely the proceedings that ultimately would have led to a verdict of guilt or innocence on [those] more serious charges." *Id.* at 499–50. This went beyond the Double Jeopardy Clause's "principles of finality and prevention of prosecutorial overreaching," *id.* at 501, and "den[ied] the State its right to one full and fair opportunity to convict those who have violated its laws." *Id.* at 502. The Court stated that no interest protected by the Double Jeopardy Clause was implicated by continuing prosecution on the remaining charges where the defendant offered only to resolve part of the charges against him and the state objected to disposing of any of the charges without a trial. *Id.* at 501. And it ultimately held that "the Double Jeopardy Clause [did] not prohibit the State from continuing its prosecution of respondent on the charges of murder and aggravated robbery." *Id.* at 502.

A substantially similar situation is presented here. The state trial court dismissed the special circumstance, and Jurado unconditionally pleaded guilty to the remaining charges. The State appealed. Applying *Johnson*, the California Court of Appeal allowed reinstatement of the special circumstance, and Jurado withdrew his guilty plea. As in *Johnson*, the Double Jeopardy Clause is not implicated because Jurado was not subject to multiple punishments for the same offense. Moreover, on direct appeal, the California Supreme Court specifically found that the prosecutor had not acquiesced in Jurado's plea, and accordingly, Jurado's case was indistinguishable from *Johnson*. *Jurado*, 38 Cal. 4th at 97.

Jurado argues that *Johnson* does not apply because more serious charges did not remain pending against him at the time he pleaded guilty. However, *Johnson* explained that where multiple charges are "embraced within a single prosecution," they are not "capable of being infinitely subdivided" such that "a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded." *Johnson*, 467 U.S. at 501. Regardless of the timing of Jurado's plea, this is the same course of events that occurred in his prosecution—the special circumstance was an included part and parcel of the initial prosecution—and the California Supreme Court was not unreasonable in concluding that the rationale in *Johnson* applied to Jurado's case.

Jurado also attempts to distinguish *Johnson* because the prosecutor in this case did not explicitly object to his plea. However, the California Supreme Court's conclusion that the

prosecutor's actions in this case were equivalent to an objection was not objectively unreasonable, as it was clear that the prosecution was opposed to the guilty plea and wanted to pursue prosecution of the special circumstance allegation. In sum, the district court correctly concluded that the California Supreme Court's determination that *Johnson*'s holding controlled was not unreasonable.[1]

## B

The California Supreme Court's conclusion that Jurado's rights to due process and a reliable penalty determination were not violated by the admission at trial of Brian Johnsen's videotaped conditional examination was not an unreasonable determination of facts within the meaning of § 2254(d)(2).

The state trial court permitted the prosecution to play Johnsen's videotaped conditional examination at trial, after specifically finding that Johnsen's life would be in jeopardy if he were to testify at trial. Johnsen, who was Holloway's boyfriend at the time of her murder, testified that Mynatt had previously kidnapped and threatened to kill Jurado, and he explained details about the conspiracy to kill Mynatt. Johnsen also discussed his telephone conversation from jail with Holloway the day she was killed. Jurado's counsel cross-examined Johnsen throughout the conditional examination.

---

[1] Because the California Supreme Court's decision rested on application of *Johnson*, we need not and do not reach Jurado's argument regarding whether the special circumstance was a different offense or a greater element of capital murder.

On appeal, the California Supreme Court concluded that, with respect to Johnsen's conditional examination, the prosecutor satisfied the requirements of California Penal Code § 1335(b) and § 1336(b) by submitting a declaration stating that Johnsen's life was in danger from Mynatt, Jurado, and Jurado's co-defendants and associates. *Jurado*, 38 Cal. 4th at 114. The court also concluded that since Jurado had a full and fair opportunity to cross-examine Johnsen during his conditional examination, his constitutional rights were not violated. *Id.* at 115.

"[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Additionally, the admission of particular evidence provides a basis for habeas relief only when it "render[s] the trial fundamentally unfair in violation of due process," *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)).

It was not objectively unreasonable for the state courts to determine, on the basis of the prosecutor's declaration, that Johnsen's life would be at risk if he testified. As demonstrated by the circumstances of the case, both Mynatt and Jurado and his associates would be highly motivated to kill or harm Johnsen—a direct threat was not necessary to draw this inference. Moreover, the admission of the conditional evidence did not violate Jurado's rights to due process or a reliable penalty determination because, as the California Supreme Court held, Jurado and his counsel had a full and fair opportunity to cross-examine Johnsen during the conditional examination. *Jurado*, 38 Cal. 4th at 115.

C

The California Supreme Court's conclusion that Jurado's constitutional rights were not violated by Steven Baldwin's testimony at trial regarding Denise Shigemura's out-of-court statements was not an unreasonable determination of the facts or an unreasonable application of clearly established federal law.

Baldwin testified that Shigemura came over to his house a couple days before the murder. Shigemura asked him if he could get her a "gat" (a slang term referring to a gun) because she had a problem that she needed to take care of. Baldwin also testified that the day after the murder, he let Jurado, Shigemura, and Mark Schmidt into his home. Baldwin testified that, while in Jurado's presence, Shigemura, sitting next to Jurado on the couch, told Baldwin, "I no longer need what it was I asked you for. We took care of the problem and we dumped the body at Balboa Park." Jurado remained silent during and after this statement was made. The trial court held that the statement was admissible as an adoptive admission by Jurado, and Shigemura's earlier statement requesting a "gat" was admissible as a co-conspirator statement.

The California Supreme Court held that the trial court correctly admitted Shigemura's statement to Baldwin in Jurado's presence as an adoptive admission. *Jurado*, 38 Cal. 4th at 116–17. The court concluded that Shigemura's request for the "gat" was not hearsay because "a request, by itself, does not assert the truth of any fact, [and] it cannot be offered to prove the truth of the matter stated," but that the statement "was hearsay insofar as it asserted that Shigemura had a problem that she needed to take care of." *Id.* at 117. The court also concluded that Jurado suffered no prejudice as a

result of the admission of the pre-crime statement because the substance of that statement was repeated in the post-crime statement made in Jurado's presence and which Jurado adopted through his conduct. *Id.* at 118.

The California Supreme Court's conclusion that the trial court's admission of Shigemura's pre-crime statement—asking Baldwin if he had a "gat" and explaining that she had a problem she needed to take care of—amounted to harmless error did not rest on an unreasonable determination of the facts or an unreasonable application of clearly established law. To grant relief on this basis, we would need to conclude that "*the harmlessness determination itself* was unreasonable." *See Davis v. Ayala*, 576 U.S. 257, 269 (2015) (quotations and citation omitted). The state court's harmlessness determination was not unreasonable here because the substance of the pre-crime statement was repeated in the post-crime statement. Thus, even if the pre-crime statement had not been admitted at trial, the jury still would have known that Shigemura previously indicated to Baldwin that she had a problem she needed to take care of and that she (and Jurado) subsequently took care of that problem by dumping a body in Balboa Park.

The California Supreme Court decision also did not rely on an unreasonable determination of the facts or an unreasonable application of clearly established law in concluding that Shigemura's post-crime statement was properly admitted as an adoptive admission. Shigemura's post-crime statement—"I no longer need what it was I asked you for. We took care of the problem and we dumped the body at Balboa Park"—accused Jurado of committing a crime, in particular, because of her use of "we" and because of her location next to Jurado on a couch. There is no

indication that Jurado could not hear Shigemura's statement, or that he did not understand that she was implicating him in the crime described. Therefore, he should have been compelled to reply or object if Shigemura's statement was incorrect, and it was not "objectively unreasonable" for the state court to construe his silence as an adoptive admission. *Miller-El*, 537 U.S. at 340. As the statement was properly admitted as an adoptive admission, it did not cause the trial to be "fundamentally unfair," in violation of due process. *See Holley*, 568 F.3d at 1101; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Likewise, its admission did not violate Jurado's clearly established Confrontation Clause rights. The Sixth Amendment's Confrontation Clause protections focus on testimonial statements, or statements that "bear testimony." *See Crawford v. Washington*, 541 U.S. 36, 51–53 (2004). Supreme Court precedent, however, has yet to address whether adoptive admissions are testimonial statements that fall within the Confrontation Clause's protections.

## D

The California Supreme Court's conclusion that Jurado's constitutional rights were not violated by the trial court's exclusion of his videotaped confession at the penalty phase does not warrant relief under § 2254(d).

During the penalty phase, defense counsel sought to admit a videotape of the confession Jurado gave to police officers. During the interrogation, Jurado wept as he admitted he "did it," and when the detectives asked if Jurado knew Holloway was still alive when he dumped her in a ditch, he said, "I don't know. Only God knows that, man." When the detectives asked if Jurado sustained any injuries during the

fight, he replied, "The only injury I got is from my, just from my conscience." The defense asserted this evidence of remorse was needed to rebut the prosecution's evidence that after Jurado was arrested, he called Christine Medlin and sang something like "On, on, the bitch is gone" to the tune of a rap song, and he also said that he did not care if he had to spend the rest of his life in prison because "it was worth it."

The trial court refused to admit the videotape because it determined that, under *Green v. Georgia*, 442 U.S. 95 (1979), the statements made on the confession tape were inadmissible hearsay, and that no applicable hearsay exception applied. It further concluded that, as to the non-assertive emotions contained in the tape, there was no compelling need for the evidence, and no substantial evidence of inherent trustworthiness or reliability. The trial court noted that "nowhere does [Jurado] expressly articulate any emotion, if you will, or concern or remorse about the victim or her family," and instead, he only "express[ed] concern about not wanting to go to jail, not wanting to be labeled as a snitch," or other fears that he or his family might be harmed.

The California Supreme Court held the trial court's exclusion of the  interrogation did not violate Jurado's right to a fair trial and reliable penalty determination because capital defendants have no constitutional right to the admission of evidence lacking trustworthiness. *Jurado*, 38 Cal. 4th at 130. The court held that the trial court had correctly determined that the circumstances of the interrogation lacked indicia of trustworthiness. *Id.* at 129–30 (citing Cal. Evid. Code §§ 1250 & 1252).

The California Supreme Court decision did not rely on an unreasonable determination of the facts within the meaning

of § 2254(d)(2), nor did the decision involve an unreasonable application of clearly established federal law. "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Such reasonable restrictions may include the requirement that certain evidence be excluded if it is not sufficiently reliable. *See id.* at 308–12 (upholding application of Military Rule of Evidence 707, which operated to exclude polygraph evidence defendant sought to introduce because "there is simply no consensus that polygraph evidence is reliable"). The California Supreme Court did not unreasonably conclude that the videotaped interrogation lacked persuasive assurances of trustworthiness. Therefore, its decision to affirm the exclusion of the videotape was not contrary to or an unreasonable application of clearly established federal law.

E

The California Supreme Court's conclusion that Jurado was not denied his constitutional right to a fundamentally fair sentencing hearing was not contrary to, or an unreasonable application of Supreme Court precedent. Jurado argues that his right was violated by the admission of evidence at the penalty phase that Holloway was seventeen weeks pregnant at the time she was killed.

The California Supreme Court affirmed the admission of the pregnancy evidence at the penalty phase because, under *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), the Eighth Amendment "permits the prosecution, in a capital case, to present evidence about the murder victim and the specific harm the defendant caused as relevant to the jury's penalty decision." *Jurado*, 38 Cal. 4th at 130. The pregnancy

evidence was relevant because the "facts concerning the victim that are admissible at the penalty phase of a capital trial as circumstances of the crime are not limited to those known to or reasonably foreseeable by the defendant at the time of the murder." *Id.* at 131. It found that the evidence was not unduly prejudicial because, in murdering Holloway, the "defendant also terminated the life of a healthy 17-week-old fetus she was carrying," and that this was "part of the harm caused by defendant's crime and thus was a legitimate, though emotional, consideration for the jury in making its penalty decision." *Id.* The court also noted that Jurado had not challenged the manner in which the evidence was presented, and confirmed that the evidence was "not presented in an unnecessarily inflammatory way." *Id.*

The California Supreme Court correctly concluded that victim impact evidence is permissible at sentencing in a capital case. *See Payne*, 501 U.S. at 824–25 ( "[A] State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant."). The decision also did not rely on an unreasonable determination of the facts. The state court weighed the impact the evidence likely had on the jury, but it reasonably concluded that the pregnancy evidence "was part of the harm caused by defendant's crime and thus was a legitimate, though emotional, consideration for the jury in making its penalty decision." *Jurado*, 38 Cal.4th at 131. This determination was not objectively unreasonable within the meaning of § 2254(d)(2).

F

The California Supreme Court concluded that Jurado's rights to due process, a fair penalty trial, and a reliable sentence were not violated by the admission of evidence concerning Jurado's prior incidents of violence. This determination was not contrary to and did not involve an unreasonable application of clearly established federal law.

At trial the prosecution introduced evidence of two physical altercations that had taken place between Jurado and his mother, Josephine Jurado. As a result, Josephine applied for a restraining order to have Jurado removed from the house. The application indicated that Jurado "threatened to obtain weapons during this incident and shoot up [her] house," "threatened to kill [her]," and "raised his hand as if to strike [her]."

Under California law at the time of Jurado's trial, "[i]f [a] defendant has been found guilty of murder in the first degree, and a special circumstance has been charged and found to be true . . . the trier of fact shall determine whether the penalty shall be death or confinement in state prison for a term of life without the possibility of parole." Cal. Penal Code § 190.3. In determining the penalty, if relevant, the trier of fact "shall take into account" "[t]he presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence." *Id.* § 190.3(b). "A habeas petitioner who challenges a state court's admission into evidence of prior acts of misconduct is not entitled to habeas corpus relief unless the state court's admission of this evidence violated the petitioner's federal due process right to a fair trial under the Constitution." *Gordon v. Duran*, 895 F.2d 610, 613 (9th

Cir. 1990).  Simple state law error does not warrant federal habeas relief.  *Estelle*, 502 U.S. at 67–68.

The admission of evidence of prior acts of violence did not render the penalty phase of Jurado's trial fundamentally unfair in violation of due process.  The evidence complied with § 190.3(b)'s requirements: Jurado's conduct amounted to battery and/or assault.

The admission of this evidence also does not run afoul of Supreme Court precedent holding that aggravating circumstances that renders a defendant *eligible* for the death penalty "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  *Zant v. Stephens*, 462 U.S. 862, 877 (1983).  Here, the evidence was introduced only after the jury had already found Jurado eligible for the death penalty.  Accordingly, the requisite narrowing function had already taken place.  *See*, *e.g.*, *id.* at 878 ("But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among [the class of persons eligible for the death penalty], those defendants who will actually be sentenced to death.").

## G

The California Supreme Court's rejection of Jurado's challenge to the instructions given to the jury in his case was not contrary to or an unreasonable application of clearly established federal law.

At trial, the prosecution introduced evidence under California Penal Code § 190.3(b) showing that Jurado aided and abetted an assault that occurred while Jurado was in jail by instigating other inmates to attack Steven Baldwin for being a snitch. The attack resulted in Baldwin losing consciousness, and a physician testified as to the injuries Baldwin suffered as a result.

Jurado claims that the trial court's failure to instruct the jury *sua sponte* on the law of assault and aiding and abetting liability left the jury to consider whether Jurado had aided and abetted assault without having a legal framework to rely upon, which in turn, caused the jury to find an unconstitutionally vague aggravating circumstance in violation of due process. Alternatively, he asserts that counsel's decision to withdraw the request for instruction on this issue amounted to ineffective assistance of counsel, in violation of Jurado's Sixth Amendment right to counsel.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)). Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

The trial court's *sua sponte* failure to instruct on aiding and abetting assault fails to satisfy this demanding standard. There is no evidence that the omission of a specific instruction addressing aiding and abetting assault—one of four nonadjudicated criminal acts the prosecution presented separate and apart from the aggravating circumstances related directly to the murder—"so infected" the sentencing proceeding such that Jurado's sentence violates due process. The jury was still instructed that it could not consider prior criminal activity alleged in aggravation unless it was convinced beyond a reasonable doubt that Jurado had engaged in that activity; sufficient evidence was presented at trial regarding the Baldwin assault such that the jury could reasonably reach that conclusion.

Jurado also has not shown that the California Supreme Court's rejection of the ineffective assistance of counsel claim was unreasonable. Even assuming that counsel's failure to request the instruction constituted ineffective assistance, Jurado cannot demonstrate prejudice because the state court reasonably could have concluded that the evidence of aiding and abetting was overwhelming.

H

The California Supreme Court's rejection of Jurado's ineffective assistance of counsel claim based on his attorney's concession that Jurado intentionally killed Holloway was not contrary to or an unreasonable application of clearly established federal law.[2, 3]

---

[2] To the extent Jurado challenges counsel's failure to investigate Jurado's LSD use, we decline to address his arguments. Jurado raised these claims only in the context of Claim 1.D in of his Second Amended

During voir dire, defense counsel conceded Jurado's involvement in killing Holloway. In his guilt phase opening statement, counsel also conceded Jurado's involvement in the killing—stating that Jurado killed Holloway in a manner that suggested rage resulting from the use of methamphetamine, as opposed to a manner that suggested premeditation and deliberation—and he argued that he would request a verdict of less than first degree murder. In support of this argument, counsel put on evidence at the guilt phase regarding Jurado's methamphetamine use, including the presence of methamphetamine in his system at the time of the murder—although there was evidence that suggested that Jurado likely ingested the methamphetamine days before the crime.

Trial counsel requested a jury instruction addressing the effect of voluntary intoxication on specific intent. At the time, voluntary intoxication was a defense to first and second degree murder. Cal. Penal Code § 22(a), (b); *People v. Whitfield*, 7 Cal.4th 437, 450–51 (1994). The trial court, however, refused to give the instruction because it concluded counsel had set forth insufficient evidence establishing that Jurado was intoxicated by methamphetamine or any other substance at the time of the murder.

During guilt phase closing arguments, counsel told the jury that Jurado committed second degree murder. He argued

Petition, but this claim was not certified on appeal by the district court, and Jurado has not requested that we expand the COA to consider that claim now.

[3] Jurado raised this claim in his 2010 state habeas petition, and the California Supreme Court denied it on the merits without explanation and also concluded it was barred as untimely and successive.

that Jurado had only committed second degree murder, and not first degree murder, because he killed Holloway in an unplanned struggle in the car that got "out of hand."

In assessing allegedly deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984), we are required "to affirmatively entertain" the range of possible reasons counsel might have proceeded as he did. *Cullen v. Pinholster*, 563 U.S. 179, 196 (2011). *Strickland* applies a strong presumption of effective assistance of counsel, a reviewing court must be highly deferential to the judgment below, and wide latitude is given to defense counsel in making tactical decisions. 466 U.S. at 689. "[I]f counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance [will] remain." *Florida v. Nixon*, 543 U.S. 175, 192 (2004).

Jurado has failed to show that trial counsel's actions were objectively unreasonable such that counsel's performance was constitutionally deficient under *Strickland*. Defense counsel's decision to concede second degree murder at the cost of the voluntary intoxication defense was not objectively unreasonable under the circumstances. Even though counsel had presented evidence that theoretically laid the foundation for the voluntary intoxication defense, that evidence was so unpersuasive that the trial judge refused to instruct the jury on it. At that point, it would have been unreasonable for counsel to continue making decisions based on a likely-unsuccessful defense. Considering the possible tactical reasons that counsel chose to concede this point, it was not objectively unreasonable for him to do so in order to bolster his credibility with the jury, or alternatively, to do anything to discourage a jury verdict of first degree murder.

Jurado's argument that defense counsel's failure to prepare and present evidence in support of the voluntary intoxication case amounted to deficient performance is likewise unpersuasive.  Jurado has not explained with any level of specificity how counsel's investigation into the methamphetamine intoxication issue was inadequate. Moreover, he does not cite any other available evidence that could have been discovered or presented in support of that defense.  The best evidence supporting the defense—the results of the blood and urine tests from Jurado's arrest—*was* presented at trial.  That evidence suggested only that Jurado had ingested methamphetamine at some point in the days before his arrest, and no evidence established that Jurado had in fact ingested methamphetamine the day of the murder or that he was intoxicated at the time of the murder.  If anything, the evidence of intoxication was so thin that counsel might have considered not presenting it at all; there was no reason counsel needed to exert additional effort in its presentation, and an expert testifying to the effects of intoxication on the brain—without additional evidence of Jurado's actual intoxication—would not have been useful.  Thus, this argument does not support Jurado's claim of deficient performance.

Jurado's claim that counsel's concession regarding second degree murder gratuitously helped the prosecution also does not amount to deficient performance.  Although conceding second degree murder necessarily conceded a number of the elements of first degree murder, it was not unreasonable given the circumstances.  By the time Jurado's case went to trial, most of the material elements of both second and first degree murder had been established; an abundance of evidence demonstrated that Jurado had killed Holloway—the primary issue was Jurado's culpability for the killing.

Although a criminal defendant has a Sixth Amendment right to decide whether to maintain his innocence, *see McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018), "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest[,] and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." *Nixon*, 543 U.S. at 192. Here, there is no evidence Jurado opposed this strategy; therefore, counsel's tactics did not run afoul of *Nixon* or *McCoy*.

I

The California Supreme Court's rejection of Jurado's claim of ineffective assistance of counsel at the penalty phase was not contrary to or an unreasonable application of clearly established federal law. Jurado argues that his counsel should have presented evidence of: (1) family background and social history; (2) depression, polysubstance abuse, and addiction; (3) decompensation and homelessness; (4) psychological and emotional immaturity; and (5) exposure to toxins as a child.

However, we need not reach the issue of whether counsel's performance was deficient, as Jurado has not adequately established that any of counsel's alleged deficiencies resulted in prejudice within the meaning of *Strickland*. To establish prejudice under *Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. Here, the crime itself was brutal and premeditated. Jurado killed in order to facilitate a

second murder. The prosecution presented substantial evidence in aggravation, including evidence of Jurado's felony conviction, assaults against his own mother, and the victim's pregnancy. The evidence Jurado claims should have been introduced was not so different in quality or kind that it would have necessarily shifted the jury's view of Jurado as an individual or his responsibility for the killing. The jury knew Jurado had a difficult childhood and home life, they knew he had a strained relationship with his father, they knew that he was a regular drug user, they knew he was twenty years old. Given these factors, Jurado has failed to establish a "reasonable probability that . . . the result of the proceeding would have been different." *Id*.

J

The district court did not abuse its discretion in denying Jurado's request for evidentiary development, discovery, and an evidentiary hearing. If a claim has been adjudicated on the merits in state court, a federal habeas petitioner seeking discovery or an evidentiary hearing must first overcome the relitigation bar of § 2254(d)(1) and (d)(2) based solely on the record that was before the state post-conviction court. *See Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). "Where a habeas petitioner has not failed to develop the factual basis of his claim as required by 28 U.S.C. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to *Townsend v. Sain*, 372 U.S. 293, 313 (1963), and (2) the allegations, if true, would entitle him to relief." *Hurles*, 752 F.3d at 791.

Jurado has not demonstrated that any of his claims survive the § 2254(d) relitigation bar on the basis of the record before the state court; therefore, the district court properly considered only the state court record in reviewing Jurado's claims for relief. *See Sully v. Ayers*, 725 F.3d 1057, 1067 n.4 (9th Cir. 2013). As these claims had not stated even a prima facie claim for relief, evidentiary development was not necessary for the district court to deny them.

Additionally, because both the California Supreme Court and the district court addressed the merits of Jurado's claims without regard to any procedural defaults, the independence and adequacy of any procedure bars is not at issue, and any argument under *Martinez v. Ryan*, 566 U.S. 1, 13–14 (2012) is moot. Therefore, there was no need to develop additional evidence related to *Martinez* cause and prejudice.

In sum, the district court did not abuse its discretion in denying Jurado's requests for evidentiary development and an evidentiary hearing.

## III

The district court properly denied Jurado's petition for a writ of habeas corpus in thoughtful, detailed opinions. It properly concluded that the California Supreme Court's decisions were not (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The district court did not abuse its discretion in denying requests for an evidentiary hearing and related relief.

We affirm the judgment of the district court.

**AFFIRMED.**