**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER GRIMES,

*Petitioner - Appellant*,

v.

BRYAN D. PHILLIPS, Warden High Desert State Prison,

*Respondent - Appellee*.

No. 21-56353

D.C. No.
2:21-cv-05735-MWF-PD

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted April 4, 2024
Pasadena, California

Filed June 26, 2024

Before: Ryan D. Nelson, Lawrence VanDyke, and Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Sanchez

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of Christopher Grimes' 28 U.S.C. § 2254 habeas corpus petition challenging his California conviction for second-degree murder in a case in which the trial court denied Grimes' motion to suppress statements from his conversation with an undercover jailhouse informant, which took place after Grimes invoked his Fifth Amendment right to counsel under *Miranda v. Arizona*, 384 U.S. 346 (1966).

The California Court of Appeal determined that the statements were admissible because law enforcement is not required to give *Miranda* warnings to a suspect before placing them in a jail cell with an undercover informant under *Illinois v. Perkins*, 496 U.S. 292 (1990). In his federal habeas petition, Grimes contended that the California Court of Appeal misapplied *Edwards v. Arizona,* 451 U.S. 477 (1981), which held that law enforcement must cease custodial interrogation when a suspect invokes their right to counsel unless they subsequently waive that right.

Because the Supreme Court has never squarely addressed whether the Fifth Amendment precludes an undercover jailhouse informant posing as an inmate to question an incarcerated suspect who has previously invoked his right to counsel, the panel held that the California Court of Appeal's decision is not contrary to, or an unreasonable

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

application of, clearly established federal law as defined by the Antiterrorism and Effective Death Penalty Act of 1996.

## COUNSEL

Patrick M. Ford (argued), La Jolla Legal Publications Inc., San Diego, California, for Petitioner-Appellant.

Herbert S. Tetef (argued), Deputy Attorney General; Jason Tran, Supervising Deputy Attorney General; Susan S. Pithey, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; for Respondent-Appellee.

## OPINION

SANCHEZ, Circuit Judge:

Christopher Grimes, a California state inmate, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction for second-degree murder. The trial court denied Grimes' motion to suppress statements from his conversation with an undercover jailhouse informant, which took place after he invoked his Fifth Amendment right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966). The California Court of Appeal affirmed Grimes' conviction on direct appeal, determining that his statements were admissible because law enforcement is not required to give *Miranda* warnings to a suspect before placing them in a jail cell with an undercover

informant under *Illinois v. Perkins*, 496 U.S. 292 (1990). In his federal habeas petition, Grimes contends that the California Court of Appeal misapplied *Edwards v. Arizona,* 451 U.S. 477 (1981), which held that law enforcement must cease custodial interrogation when a suspect invokes their right to counsel unless they subsequently waive that right.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm. Because the Supreme Court has never squarely addressed whether the Fifth Amendment precludes an undercover jailhouse informant posing as an inmate to question an incarcerated suspect who has previously invoked his right to counsel, the California Court of Appeal's decision is not contrary to, or an unreasonable application of, clearly established federal law as defined by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.

### A.

On February 12, 2014, Adrian Dawson and his fiancée Marrisha Robinson parked their Mitsubishi at a Los Angeles strip mall. Dawson went into a store while Robinson waited in the car with their infant daughter. Grimes drove into the same parking lot in his gold four-door Mercedes and double parked behind Dawson and Robinson's Mitsubishi. Grimes exited his Mercedes without putting it in gear or setting the brake, causing it to roll forward and hit the rear bumper of the Mitsubishi. Robinson immediately checked on her daughter in the back seat and then exited her car. Grimes told Robinson not to worry and said he would "take care of it." Dawson ran out of the store and "sucker punched" Grimes in the face two or three times yelling, "My baby's in the car." Grimes told Dawson that he did not want to fight,

quickly got back in his Mercedes, and drove away from the parking lot. Dawson and Robinson returned to their car, and Robinson drove the Mitsubishi out of the parking lot.

Less than two minutes later, Dawson told Robinson that the Mercedes involved in the accident was behind them. Robinson slowed down, thinking she and Grimes might exchange insurance information. The Mercedes suddenly sped up and fired four gunshots from the driver's side window toward the front passenger seat of the Mitsubishi. Dawson, who was seated in the front passenger seat, was struck. He told first responders that the shooter was driving a gold four-door Mercedes. Dawson died later that day from a gunshot wound to his abdomen.

Grimes was arrested two days after his altercation with Dawson. Robinson identified Grimes in a photographic lineup. Ammunition and bullet casings capable of being fired by a nine-millimeter firearm, the type of weapon used to kill Dawson, were also found in a search of Grimes' home and car. Cell-phone records revealed that Grimes made 11 phone calls to friends immediately after the shooting and sent and received several text messages. A friend texted Grimes to tell him he was "doing his homework now," to which Grimes responded by describing Dawson's appearance. Grimes told the same friend, "I left the area and did my shit. It's kill or be killed. Not fight for no reason." The next day, Grimes texted an unknown number stating, "Don't play games with me I stay with heat."

After his arrest, Grimes was subjected to custodial interrogation. Grimes asked to have his lawyer present before the interrogation began. After detectives read Grimes his *Miranda* rights, he once again requested his lawyer. Rather than end the interview, detectives told Grimes that he

did not have to say anything because he had invoked his right to counsel, but wanted to let him know that they were conducting a "very serious investigation" in which he had been implicated. Detectives told Grimes that the investigation was about a murder and that he was going to be arrested for the crime. Grimes asked, "Why would I be arrested for murder?" One detective then asked if Grimes wanted to wait for an attorney or talk. Grimes eventually agreed to speak without the presence of an attorney. Grimes admitted to having an altercation with Dawson in the parking lot of the strip mall but denied involvement in the shooting that killed Dawson.

A few hours after the custodial interrogation, detectives placed Grimes in a jail cell with an undercover informant posing as a fellow inmate. The undercover informant had been given information by detectives about Dawson's death, including that a firearm was used in the crime and Dawson's girlfriend was present during the shooting. Throughout his conversation with the informant, Grimes maintained that he was not the shooter, but he made several incriminating statements. When told by the informant that gunshot residue remains when a gun is fired inside a car, especially out of the right window, Grimes corrected him and said, "Out the left." Grimes expressed concern that gunshot residue or shell casings might be found in his vehicle and commented about getting a witness who identified him in the shooting out of the way. He also stated that he knew the shooting took place "two minutes" after his strip mall incident with Dawson, despite not being told that fact by detectives.

Prior to trial, Grimes moved to suppress all statements he made to law enforcement after invoking his *Miranda* right to counsel during his custodial interview. The trial court denied Grimes' motions to suppress, finding that although

Grimes had unequivocally invoked his right to counsel at the start of his custodial interview, he waived it by voluntarily reinitiating further conversation with detectives. The trial court also ruled that the recorded statements to the undercover jailhouse informant were admissible because Grimes was not aware that the informant was working for the police and spoke freely.

Grimes was tried for Dawson's murder before a Los Angeles jury. Grimes testified in his own defense, acknowledging his involvement in the strip mall collision but insisting he had not shot Dawson. He claimed that he drove home after leaving the strip mall because he could not find his insurance information and believed Dawson was a violent gang member. The state relied on Grimes' statements to the informant during trial to establish Grimes' involvement in Dawson's shooting. Although the jury in Grimes' first trial could not reach a verdict, on retrial a second jury convicted him of second-degree murder and found that he personally used and discharged a firearm causing great bodily injury or death. Grimes was sentenced to 40 years to life in state prison.

## B.

On direct appeal, Grimes asserted that the trial court erred by admitting statements from his custodial interview and from the recorded conversation with the undercover jailhouse informant. The California Court of Appeal agreed that detectives violated Grimes' *Miranda* rights by continuing to interrogate him after he invoked his right to counsel during the custodial interview. The court concluded that Grimes did not reinitiate questioning by responding to statements from detectives designed to elicit an incriminating response because there was no break in the

interrogation. However, the admission of Grimes' custodial interview statements was found harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967).

With respect to Grimes' recorded conversation with the undercover jailhouse informant, the California Court of Appeal determined that the statements were properly admitted. The state court concluded that the United States Supreme Court's holding in *Perkins* makes clear that the policy underlying *Miranda*—"protecting a suspect from coercion inherent in the 'police-dominated atmosphere' of a custodial interview"—is not implicated when a suspect makes statements to an individual they believe is a fellow inmate. In the absence of a coercive custodial environment, the state court found that the recorded statements were properly admitted and affirmed Grimes' conviction. Grimes' petition for review before the California Supreme Court was denied without comment.

Grimes filed the instant federal habeas petition under 28 U.S.C. § 2254 seeking relief on the basis that the trial court erred by admitting his recorded conversation with the undercover informant.[1] A magistrate judge recommended that the district court deny Grimes' petition because the Supreme Court has never held that *Miranda* requires suppression of a defendant's custodial statements made to an undercover informant and the state court reasonably applied existing Supreme Court precedent to determine Grimes' statements to the jailhouse informant were admissible. The district court adopted the magistrate judge's report and

---

[1] Grimes also unsuccessfully challenged the trial court's refusal to instruct the jury on voluntary manslaughter, but we did not certify that issue for appeal.

recommendation as its own findings and conclusions. We granted a certificate of appealability on the following issue: whether the admission of Grimes' recorded statements to a jailhouse informant violated Grimes' Fifth Amendment rights because he had previously invoked his right to counsel under *Miranda*.

## II.

We review a district court's denial of habeas relief de novo. *Jurado v. Davis*, 12 F.4th 1084, 1090 (9th Cir. 2021). AEDPA governs our review because Grimes filed his habeas corpus petition after April 24, 1996, when the statute became effective. *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). Under AEDPA, Grimes can prevail on his habeas petition only if he demonstrates that the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). AEDPA's "highly deferential standard" applies to the state court's last reasoned decision on the merits, in this case the California Court of Appeal decision. *See Reis-Campos v. Biter*, 832 F.3d 968, 973 (9th Cir. 2016) (citation omitted).

Grimes' habeas petition relies on the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1). A decision is "contrary to clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Ochoa v. Davis*, 50 F.4th 865, 876 (9th Cir. 2022) (citing *Williams v. Taylor*,

529 U.S. 362, 413 (2000)) (alterations in original). A state court decision involves "an unreasonable application of" clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Taylor*, 529 U.S. at 407–08. The relevant inquiry under AEDPA is not whether the state court's determination was erroneous or incorrect, but rather whether it was "objectively unreasonable," a "substantially higher threshold." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"Clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions at the time of the relevant state-court decision." *Taylor*, 529 U.S. at 412. Federal law is "clearly established" if the Supreme Court has "squarely addresse[d]" a claim and provided a "clear answer." *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008). "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *White v. Woodall*, 572 U.S. 415, 426 (2014) (quotation marks and citation omitted).

## A.

Grimes' habeas petition is based on the constitutional safeguards mandated by *Miranda* and its progeny. *Miranda* holds that the Fifth Amendment's prohibition against self-incrimination requires police to inform a suspect that he has the right to the presence of an attorney before subjecting him to custodial interrogation. *Miranda*, 384 U.S. at 444–45. If the accused requests counsel, the interrogation must cease until an attorney is present. *Id.* at 474. The warning mandated by *Miranda* is meant to preserve the privilege against self-incrimination during "incommunicado interrogation of individuals in a police-dominated

atmosphere." *Id.* at 445. Without proper safeguards, "the process of in-custody interrogation of persons suspected or accused of a crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id*. at 467.

The protections outlined by *Miranda* were reinforced by the Supreme Court in *Edwards*, which concerned the reinterrogation of a suspect after he invoked his right to counsel. *Edwards*, 451 U.S. at 485. In *Edwards*, the defendant willingly submitted to police questioning during an interview after being informed of his *Miranda* rights. *Id.* at 478. When he learned that another suspect in custody had implicated him in the crime, the defendant sought to make a deal with officers but expressed his desire to have an attorney present before doing so. *Id.* at 479. Officers ceased questioning and the defendant was taken to jail. *Id.* The next morning, officers asked to see the defendant in jail. *Id.* The defendant did not wish to speak to the officers but was told he had to. *Id.* Officers once again read the defendant his *Miranda* rights and he subsequently made incriminating statements. *Id.* The Supreme Court held that officers violated the defendant's Fifth Amendment rights because the invocation of his right to counsel during the initial interview precluded "further interrogation" until the defendant's counsel was present or he initiated communication with police. *Id.* at 484–85. *Edwards* made clear that "a valid waiver of [the right to counsel] cannot be established by showing only that [the defendant] responded to further police-initiated custodial interrogation even if he [was] advised of his rights." *Id.* at 484.

In *Perkins*, the Supreme Court clarified that "fidelity to the doctrine announced in *Miranda* requires that it be

enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Perkins*, 496 U.S. at 296. There, an undercover agent was placed in a cell with the defendant, who was already incarcerated on charges unrelated to the subject of the agent's investigation. *Id.* at 294. The defendant made statements implicating himself in the crime the agent was investigating. *Id.* The defendant argued that his statements should be inadmissible at trial because he had not been given *Miranda* warnings by the agent. *Id.* The Supreme Court disagreed, holding that an undercover law enforcement officer posing as a fellow inmate need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. *Id.* at 300. "*Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner." *Id.* at 297. When a suspect "boast[s] about their criminal activities in front of persons whom they believe to be their cellmates," those statements are considered voluntary. *Id.* at 298. Thus, there "is no federal obstacle to their admissibility at trial." *Id.* at 300.

Relying on *Perkins*, the California Court of Appeal held that the trial court did not err by denying Grimes' motion to suppress his recorded conversation with the undercover jailhouse informant. The state court observed that "neither the United States Supreme Court nor the California Supreme Court has addressed the application of *Miranda* in a case where the defendant has invoked his or her *Miranda* rights prior to the *Perkins* interview." The court reasoned that under *Perkins*, the underlying policy of *Miranda* and *Edwards* was not implicated when Grimes voluntarily spoke

to a person he did not know was an agent of the police after invoking his *Miranda* right to counsel.

The California Court of Appeal's decision that Grimes' statements to the undercover informant were admissible at trial is not contrary to, or an unreasonable application of, "clearly established Federal law" as defined by AEDPA. 28 U.S.C. § 2254(d)(1). Neither *Edwards* nor *Perkins* provides a "clear answer" to the issue presented by Grimes—whether the Fifth Amendment requires the suppression of a defendant's statements made to an undercover informant after the defendant invoked his *Miranda* right to counsel during a custodial interrogation. *See Wright*, 552 U.S. at 126. As Grimes acknowledges, the Supreme Court has never "squarely addressed" if the Fifth Amendment privilege against self-incrimination precludes law enforcement from using an informant to obtain incriminating statements from a suspect who has invoked his *Miranda* right to counsel. *Id.* Under AEDPA, the California Court of Appeal's "adjudication of [an] issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law." *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007) (citing *Kane v. Garcia Espitia*, 546 U.S. 9, 11 (2005)); *see also White*, 572 U.S. at 426 (Section 2254(d)(1) "does not require state courts to *extend* [Supreme Court] precedent or license federal courts to treat the failure to do so as error."). Accordingly, Grimes is not entitled to habeas relief.

## B.

Grimes nevertheless contends that the California Court of Appeal's decision is contrary to, and an unreasonable application of, the bright line rule established in *Edwards*. He asserts that detectives failed to cease all "police-initiated

custodial interrogation" when he invoked his *Miranda* right to counsel. *Edwards*, 451 U.S. at 484. After his *Miranda* right to counsel was violated by detectives during the custodial interview, Grimes alleges he was "delivered [] to an undercover agent to finish the interrogation." Because he never waived his *Miranda* right to counsel after invoking it, Grimes claims that continued "interrogation" by the undercover informant violated *Edwards*.**2**

The California Court of Appeal's reliance on *Perkins* rather than *Edwards* to resolve this claim was not "objectively unreasonable" under AEDPA. *See Renico*, 559 U.S. at 773. *Edwards* "does not apply to all interactions with the police—it applies only to custodial interrogation." *Martinez v. Cate*, 903 F.3d 982, 993 (9th Cir. 2018). *See also Perkins*, 496 U.S. at 296 ("Miranda forbids coercion, not mere strategic deception. . ."). "Interrogation" is express questioning by police or its "functional equivalent," meaning "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Whether police are "reasonably likely to elicit an incriminating response"

---

2 Grimes cites Justice Brennan's concurrence in *Perkins,* which emphasizes that the majority's holding is limited to "the question of whether *Miranda* applies to the questioning of an incarcerated suspect by an undercover agent." *Perkins*, 496 U.S. at 300–01. In Justice Brennan's view, "[n]othing in the Court's [*Perkins*] opinion suggests that, had [the defendant] previously invoked his Fifth Amendment right to counsel [], his statements would be admissible." *Id.* But Justice Brennan's concurrence in *Perkins* does not constitute clearly established Supreme Court precedent for AEDPA purposes. *See Woods v. Donald*, 575 U.S. 312, 316 (2015) ("clearly established Federal law" under Section 2254(d)(1) includes only the holdings of Supreme Court decisions).

depends "primarily upon the perceptions of the suspect, rather than the intent of the police." *Id*. at 301; *see also Perkins*, 496 U.S. at 296 ("Coercion is determined from the perspective of the suspect.").

As the California Court of Appeal found, Grimes was unaware that the jailhouse informant was working for law enforcement. The record supports the state court's determination that Grimes spoke freely, believing the informant was a fellow inmate. Therefore, the state court's conclusion that Grimes' conversation with the informant lacked the coercive or police-dominated atmosphere of custodial interrogation underlying the Supreme Court's holding in *Miranda* and *Edwards* was reasonable. "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," it is not unreasonable. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In sum, the California Court of Appeal's determination that the trial court did not err by denying Grimes' motion to suppress his recorded conversation with an undercover jailhouse informant was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. We affirm the judgment of the district court denying Grimes federal habeas relief.

**AFFIRMED.**